STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

FROST CONTROLS, INC.,
ROBERT J. THOMSON, and
FREDERICK G. THOMSON

v.

CITIZENS BANK OF
MASSACHUSETTS

C.A. 05-2721

**COMPLAINT**

**Parties**

1. Frost Controls, Inc. ("Frost Controls") is a Rhode Island corporation with a principal place of business at 7 Industrial Drive South, Smithfield, Rhode Island.

2. Citizens Bank of Massachusetts ("Citizens") is a Massachusetts corporation with a principal place of business at 28 State Street, Boston, Massachusetts.

3. Robert J. Thomson ("Robert") is an individual who resides at 51 Cromwell Ave., Warwick, Rhode Island. Robert is the President of Frost Controls.

4. Frederick G. Thomson ("Fred") is an individual who resides at 10 Fenner Grant Lane, Cumberland, Rhode Island. Fred is the Vice President of Frost Controls.

**Jurisdiction**

5. This Court's jurisdiction is based upon R.I. *Gen. Laws* §§ 8-2-13, 8-2-14, and 9-30-1. The amount in controversy is sufficient to establish the jurisdiction of this Court.

6. Venue in this Court is based upon the provisions of R.I. *Gen. Laws* § 9-4-3.

## General Allegations

7. On or about November 30, 1995, Frost Controls entered into an agreement with State Street Bank & Trust Co. ("State Street") whereby State Street agreed to provide Frost Controls with a $750,000 term-loan (the "Term Loan"). The loan agreement was memorialized in a document entitled *Line of Credit and Term Loan Agreement* ("Loan Agreement"), *attached hereto as* **Appendix A**, and in a Promissory Note signed by Robert Thomson and attested to by Fred Thomson (the "Note"), *attached hereto as* **Appendix B**.

8. State Street was, at that time and at all times relevant to the allegations made in this Complaint, a Massachusetts corporation. State Street is now defunct.

9. The Loan Agreement provided that:

> . . . . Lender agrees to advance the Term Loan as follows: $350,000 shall be advanced on the date hereof; $100,000 shall be advanced following the receipt by the Borrower of export certification from the Recognized Organization, provided such certification is received on or before August 30, 1996; and $300,000 shall be advanced upon Lender's satisfaction in its reasonable discretion that Borrower has demonstrated quantifiable Export Marketing Success.

*Loan Agreement*, §2.01(a).

10. The Note provided that "[t]he principal of this Note shall be repaid in 77 consecutive equal monthly payments each in the amount of $ 9,616.00 beginning on July 1, 1996 with a 78th and final payment of all amounts outstanding hereunder, due and payable on December 1, 2002." *Note*, ¶ 2. *See also Loan Agreement §2.02(a).* [The parties contemplated that no balloon payment would be required with respect to the repayment of the Term Loan.]

11. The parties contemplated that no balloon payment of interest would be required with respect to repayment of the Term Loan as the Loan Agreement and Note provided for payment of

interest – at a variable rate – calculated on a monthly basis. The Note provided as follows: "[i]nterest with respect to all amounts outstanding hereunder shall be payable. . . monthly together with the principal payments hereunder." *Note*, ¶ 3. *See also Loan Agreement*, § 2.02.

12. The Term Loan was guaranteed by the United States Small Business Administration ("SBA") *See attached* **Appendix C**. The SBA does not allow balloon payments with respect to repayment of principal or interest on loans that it guarantees. 13 C.F.R. § 120.214(f).

13. On October 23, 1996, Robert Thomson, on behalf of Frost Controls, executed "Amendment No. 1 to Loan Agreement and Term Note." The Amendment was effective as of July 1, 1996. The Note was amended to render the Term Loan, essentially, a $350,000 line of credit and a $400,000 fixed loan which was contingent on Frost Controls obtaining certain benchmarks. *See* Amendment No. 1 to Loan Agreement and Term Note (the "First Amendment"), *attached hereto as* **Appendix D**. The First Amendment provided as follows:

> . . . . Lender agrees to advance the Term Loan as follows: Up to $350,000 may be advanced on the date hereof *or at anytime hereafter* until June 30, 1997; $100,000 shall be advanced following the receipt by the Borrower of export certification from the Recognized Organization, provided such certification is received on or before June 30, 1997; and $300,000 shall be advanced upon Lender's satisfaction in its reasonable discretion that Borrower has demonstrated quantifiable Export Marketing Success. . .

*First Amendment*, § C.1.(A). (Emphasis added). The parties contemplated that no balloon payment would be made pursuant to the First Amendment which provided that:

> The principal of this Note shall be repaid in seventy-seven consecutive monthly payments, beginning on July 1, 1996, with the seventy-eighth and final payment of all amounts outstanding hereunder due and payable on December 1, 2002. On July 1, 1996, the monthly payment under the Note shall be $1,282.05 and the next seventy-six payments will be in the same amount, with all outstanding principal and interest due on December 1, 2002. At the time of each subsequent advance under the Term Loan, the Borrower agrees to execute a new amendment to the Note, increasing

> such monthly installment payments based on such subsequent advance, obligating the Borrower thereafter to pay consecutive equal monthly payments over the remaining term of this Note until this Note is paid in full, with no *balloon payment resulting on the maturity date*, December 1, 2002.

*First Amendment*, § C. 1.(B).

14. Prior to October 1, 1999, the Note (but not the Loan Agreement) was amended to provide for a maximum outstanding principal amount of $250,000 (the "Allonge"). During June of 1999, State Street advised Frost Controls that it was requiring the Allonge would be effective as of August 1, 1999. Execution, however, was postponed, for reasons unrelated to the terms of the transaction, to September, 1999. The Allonge was executed by Fred Thomson as guarantor on September 30, 1999.

15. The Allonge was intended to be effective as of August 1, 1999, when the then-outstanding balance of principal *and* interest under the First Amendment was $130,410.32. Pursuant to the Allonge, State Street agreed to make an additional disbursement so that the principal loan balance would be increased to $250,000 and monthly payments thereon would commence on October 1, 1999.

16. When first presented with the Allonge, Robert Thomson indicated his approval of the main terms of the Allonge by initialing the document adjacent to the signature lines. However, he did not sign the Allonge because it recited an effective date of September 30, 1999. *See attached* **Appendix E** p. 2. The September 30, 1999 effective date was inconsistent with the handwritten balance of $130,410.32, which was the August 1, 1999 balance and August 1, 1999 was the date which the parties intended to be the effective date of the Allonge (the formal execution of which was merely postponed).

17. Upon voicing his objections, Robert was provided with a new draft of the Allonge that contained an effective date of August, 1999, which he signed on behalf of Frost Controls and as Guarantor. Robert Thomson also initialed the handwritten amount of $130,410.32, thereby acknowledging this to be the amount outstanding as of the *effective* "date of this Allonge." *See attached* **Appendix F.**

18. Prior to the formal execution of the Allonge on September 30, 1999, State Street withdrew payments of $4,333.33 on August 1, 1999 and on September 1, 1999, as required by the First Amendment. Under the Allonge, these payments would not have been made (the first payment under the Allonge, in the amount of $3,166.00, was not due until October 1, 1999). As a consequence of these payments, on October 1, 1999 State Street only disbursed $110,923.02. (the "disbursement"). This disbursement assumed a $250,000 loan balance on August 1, 1999, – the date the parties intended as the effective "date of this Allonge" – reduced by the August and September payments. This transaction was memorialized on the Allonge by a handwritten notation made by agents of State Street and/or Citizens. *See attached* **Appendix G**. A copy of the Allonge, with this notation, was provided to the Plaintiffs via fax from the Defendant on August 30, 2004.

19. By crediting the August 1 and September 1, 1999 payments, State Street properly treated August 1, 1999 as the effective date of the Allonge. However, State Street incorrectly assessed these payments to reduce the amount of the disbursement, rather than reducing Frost Control's August 1, 1999 balance.

20. State Street withdrew $4333.33 from Frost Control's bond account on October 1, 1999, pursuant to the terms of the First Amendment. Upon information and belief, this amount was not properly credited to reduce Frost Control's loan balance.

21. The Allonge was approved and guaranteed by the SBA. *See attached* **Appendix H** (Letter from State Street to SBA, dated June 23, 1999). In obtaining this approval, State Street represented to the SBA that pursuant to the Allonge, the loan to Frost Controls would be a "five year term loan *with a five year amortization.*" *Id.* at p. 2, ¶ 1 "Proposal." (Emphasis added). Upon information and belief, at no time did State Street inform the SBA or the Plaintiffs that a balloon payment would be required under the terms of the Allonge. The SBA does not allow balloon payments. 13 C.F.R. § 120.214(f).

22. Prior to September 1, 1999, Citizens acquired the Allonge, Note, Loan Agreement and associated SBA guarantees as part of its purchase of State Street's commercial banking business. *See attached* **Appendix I**. Upon information and belief, State Street required that the Allonge be effective as of August 1, 1999 because of the terms of this sale to Citizens.

23. Citizens knew or should have known that the SBA approved and guaranteed the loan, as modified by the Allonge, and knew or should have known that the SBA does not allow balloon payments.

24. On or about June 22, 2004, Citizens notified Frost Controls of the impending maturity date of its loan, as modified by the Allonge. *See attached* **Appendix J**, "Letter from Citizens Bank to Robert and Fred Thomson," *dated* June 22, 2004. Thereafter, on or about July 27, 2004, Citizens submitted to Frost Controls an invoice for the amount of $64,026.71. *See attached* **Appendix K** (the "invoice" or "claimed debt").

25. The amount of the invoice was based, in part, upon State Street's and/or Citizens' bookkeeping errors including, *inter alia*, an entry of $130,410.32 as Frost Controls' outstanding loan balance *as of* October 1, 1999 (rather than as of August 1, 1999). This bookkeeping error also

caused Frost Controls to be charged excess interest.

26. This bookkeeping error was not discovered by the Plaintiffs until August 23, 2004, when Citizens faxed a document from State Street's accounting records indicating a manual data entry for October 1, 1999. *See attached* **Appendix L**.

27. Upon receipt of the invoice, the Plaintiffs attempted in good faith to resolve these matters with Citizens. Citizens has refused to provide the Plaintiffs with documents concerning the loan in a good faith effort to resolve this matter.

28. Citizens' claimed debt is subject to a good faith dispute as to maturity and amount.

29. Citizens ignored the Plaintiffs' good faith contentions and fraudulently replied thereto that "[t]he parties do not dispute that the loan has matured and that all amounts are due and owing." *See attached* **Appendix M,** ¶ 1.

30. While at the same time purporting to address Plaintiffs' good faith contentions, Citizens has relied on this fraudulent statement to wrongfully offset funds from the bank account of Fred Thomson. *See id.* Citizens has wrongfully offset the full amount of the claimed debt, plus interests, costs and attorneys' fees. *Id.* at ¶ 4.

31. Citizens claims that a guaranty executed by Fred Thomson provides its right of setoff. *Id. See also attached* **Appendix N** ("Guaranty of Frederick G. Thomson"). This guaranty is limited to the liabilities and obligations of the obligor (Frost Controls) and does not purport to alter common law, the application thereof, or to otherwise guaranty disputed claims.

**COUNT I: WRONGFUL SETOFF AND BREACH OF GUARANTY CONTRACT**

32. Plaintiff Fred Thomson hereby incorporates by reference each and every factual

allegation set forth in the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

33. Citizens wrongfully offset from the bank account of Fred Thomson the amount for a claimed debt which is subject to a good faith dispute as to amount and maturity.

34. Defendant's wrongful setoff constitutes a breach of the contract of guaranty pursuant to which the setoff was allegedly undertaken.

WHEREFORE, Plaintiff Fred Thomson requests the following relief:

a) That the Defendant be ordered to put Plaintiff, Fred Thomson's account in the status in which it would be were it not for the wrongful conduct alleged in this Complaint, by restoring all principal amounts wrongfully setoff, together with interest from the date of the wrongful setoff;

b) That Fred Thomson be awarded compensatory damages in an amount to be proven at trial;

c) That Fred Thomson be awarded all incidental damages incurred as a result of the wrongful conduct alleged in this Complaint;

d) That Fred Thomson be awarded his costs including reasonable attorneys' fees; and

e) That Fred Thomson be awarded all further relief that this Court deems appropriate under the circumstances, including punitive damages.

**COUNT II: BREACH OF ACCOUNT CONTRACT**

35. Plaintiff Fred Thomson hereby incorporates by reference each and every factual allegation set forth in the preceding paragraphs of this Complaint as if fully set forth in this

paragraph.

36. Citizens wrongfully offset from the bank account of Fred Thomson amounts for a claimed debt that is subject to a good faith dispute as to amount and maturity.

37. The Bank breached its contract with Fred Thomson, as the holder of the account made subject to setoff, by seizing those portions of his account not due and owing and/or which were subject to a good faith dispute as to amount and maturity.

WHEREFORE, Plaintiff Fred Thomson requests the following relief:

a) That the Defendant be ordered to put Fred Thomson's account in the status in which would be were it not for the wrongful conduct alleged in this Complaint by restoring all principal amounts wrongfully setoff, together with statutory interest from the date of the wrongful setoff;

b) That Fred Thomson be awarded compensatory damages in an amount to be proven at trial;

c) That Fred Thomson be awarded all incidental damages incurred as a result of the wrongful conduct alleged in this Complaint;

d) That Fred Thomson be awarded his costs including reasonable attorneys' fees; and

e) That Fred Thomson be awarded all further relief that this Court deems appropriate under the circumstances.

**<u>COUNT III: DECLARATORY RELIEF</u>**

38. Plaintiffs hereby incorporate by reference each and every factual allegation set forth in the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

39. In effectuating the Allonge, State Street incorrectly assessed August 1 and September 1, 1999 payments to reduce the amount of funds to be disbursed, rather than to reduce Frost Control's August 1, 1999 balance.

40. In effectuating the Allonge, State Street incorrectly carried the full amount of Frost Controls August balance ($130,410.32) forward and "created" a balance of $130,410.32 as of October 1, 1999.

41. As a consequence of State Street's accounting errors, Citizens claims an amount in excess of that owed, including $8,666.66 in principal and all interest charges resulting therefrom since 1999.

42. As a consequence of State Street's failure to properly credit Frost Controls' October 1, 1999 payments, Citizens claims an additional excess amount of $4,133.33 in principal and all interest charges resulting therefrom since 1999.

WHEREFORE, Plaintiffs requests the following relief:

a) That the Court declare Plaintiffs' rights pursuant to the Loan Agreement and Allonge by, *inter alia*, (1) enjoining Citizens from collecting the $8,666.64 that its predecessor in interest failed to assess against the August 1, 1999 balance, (2) enjoining Citizens from collecting the $4,133.33 that its predecessor in interest failed to credit in October 1999; and (3) requiring Citizens to recompute its loan history and reduce the amount claimed by amounts of interest erroneously charged to Frost Controls (together with interest upon such erroneously charged amounts);

b) That Plaintiffs be awarded compensatory damages in an amount to be proven

at trial;

c) That Plaintiffs be awarded all incidental damages incurred as a result of the wrongful conduct alleged in this Complaint;

d) That Plaintiffs be awarded their costs including reasonable attorneys' fees; and

e) That Plaintiffs be awarded all further relief that this Court deems appropriate under the circumstances.

**COUNT IV: BREACH OF CONTRACT**

43. Plaintiffs hereby incorporate by reference each and every factual allegation set forth in the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

44. In executing the Allonge, State Street represented to the SBA that the loan would be a "five year term loan *with a five year amortization*." *See*, *e.g.*, **Appendix H** at p. 2, ¶ 1 "Proposal." (Emphasis added.)

45. The SBA approval and guarantee constituted a contract between the SBA and State Street, it successors and assigns.

46. The provision for a balloon payment is a breach of the contract with SBA.

47. Plaintiff Frost Controls is an intended third-party beneficiary of the contract.

48. Citizens is estopped from collecting any alleged balloon payment.

WHEREFORE, Plaintiffs request the following relief:

a) That the Defendant be enjoined from collecting any amounts purportedly due and owing as part of a balloon payment or, alternatively, that Defendant be enjoined from collecting such amounts *as* a balloon payment;

b) That Plaintiffs be awarded compensatory damages in an amount to be proven at trial;

c) That Plaintiffs be awarded all incidental damages incurred as a result of the wrongful conduct alleged in this Complaint;

d) That Plaintiffs be awarded their costs including reasonable attorneys' fees;

e) That Plaintiffs be awarded all further relief that this Court deems appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all counts.

The Plaintiffs
By Their Attorneys,

Ratcliffe Burke Harten & Elias, LLP

J. Richard Ratcliffe

J. Richard Ratcliffe, #2603
1600 Financial Plaza
Providence, RI 02903
Tel: 401-331-3400
Fax: 401-331-3440

Date: May 27, 2005

# State of Rhode Island and Providence Plantations
## SUPERIOR COURT

[x] PROVIDENCE/BRISTOL [ ] KENT [ ] WASHINGTON [ ] NEWPORT

CIVIL ACTION, FILE No. 05-2721

Frost Controls, Inc., et al
**Plaintiff**

v.

Citizens Bank of Massachusetts
**Defendant**

***Summons***

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon J. Richard Ratcliffe Plaintiff's attorney, whose address is Ratcliffe Burke Harten & Elias, LLP 1600 Financial Plaza, Providence, RI 02903 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you,exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

[signature]
CLERK

Dated: June 1, 2005

**(Seal of the Superior Court)**