LOAN NUMBER
GP 765 319 3009 PRO

**U.S. SMALL BUSINESS ADMINISTRATION**
**Providence District Office**
**380 Westminster Mall**
**Providence, RI 02903**
**AUTHORIZATION AND LOAN AGREEMENT**
**(GUARANTY LOAN)**

State Street Bank
225 Franklin Street
Boston, MA 02110

Your request dated September 13, 1995 for SBA to Guarantee Eighty-five percent (85%) of a loan in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) to be made by Lender to

Frost Controls, Inc.
7 Industrial Drive South
Smithfield, RI 02917-1526

is hereby approved pursuant to Section 7(a) of the Small Business Act as amended.

1. The following forms are herewith enclosed:

A. Three copies of SBA Note (Form 147 - revised), one to be executed by the Borrower, the other two to be conformed. The original executed copy must be retained by you and one conformed copy must be sent to SBA immediately after first disbursement, together with a guaranty fee equal to 2% of the amount guaranteed. This fee should be paid by Lender within 90 days of the date of this Authorization and may be charged to Borrower, only after Lender has paid fee to SBA and initial disbursement made to Borrower. This fee may be deducted from loan proceeds.

B. Copies of SBA Settlement Sheet, (Form 1050), are to be completed and executed by Lender and Borrower to reflect each disbursement. Prompt reporting of disbursements is necessary. Return the first two copies ("Denver FOD" copy and "Servicing Office" copy) to SBA.

C. Compensation Agreements (Form 159) shall be executed by Borrower, his representatives and Lender and returned to SBA if Borrower has employed an attorney, accountant or other representative, or if Borrower is charged fees for services by Lender or an associate of Lender. If no such fees have been charged, please write "None" and return the form, executed by the Lender, to SBA.

D. The original copy of this Authorization (and documentation itemized below, if any), shall be executed prior to first disbursement and retained in the loan file by the Lender. (A copy of the Authorization, amendments and itemized documents should be given to the Borrower.)

(1) SBA Form 148, Guaranty (2)
(2) SBA Form 160, Corporate Resolution of Board of Directors
(3) SBA Form 652, Assurance of Compliance for Nondiscrimination
(4) SBA Form 722, Equal Opportunity Poster
(5) SBA Form 793, Notice to New SBA Borrowers

2. This Authorization is subject to:

A. Provisions of the Guaranty Agreement (SBA Form 750) between Lender and SBA dated October 2, 1978.

B. First disbursement of the loan being made not later than three (3) months, and no disbursement being made later than twelve (12) months, from the date of this Authorization, unless such time is extended pursuant to prior written consent by SBA.

C. Receipt by Lender of evidence satisfactory to it in its sole discretion, that there has been no unremedied adverse change since the date of the Application, or since any of the preceding disbursements, in the financial or any other conditions of Borrower, which would warrant withholding or not making any such disbursement or any further disbursement.

D. The representations made by Borrower in its loan application, the requirements or conditions set forth in Lender's application form, including the supporting documents thereto, the conditions set forth herein and any future conditions imposed by Lender (with prior SBA approval).

E. Prior to loan disbursement Lender and Borrower will comply with provisions of SBA Policy Notice 9000-941, "Obtaining IRS Tax Return Information to Verify Financial Information Submitted in Program Applications." Lender to follow IRS Instruction letter attached.

3. Terms of Loan:

A. Repayment terms, interest rate(s) and maturity:

(1) NOTE PAYABLE: Seven (7) years and six months from date of Note, with interest only payments for the first six (6) months at the initial rate of ten and one quarter percent (10.25%) per annum beginning one (1) month from date of Note and monthly payments of principal each in amount of Nine Thousand Six Hundred Sixteen Dollars ($9,616.00) beginning seven (7) months from the date of Note plus interest; with the further provision that said installments shall be applied first to interest accrued to the date of receipt of said installment and the balance, if any, to principal.

(2) This is a variable interest rate loan in which the interest rate will fluctuate in accordance with the prime rate published in the Wall Street Journal. The prime rate published as of September 14, 1995 in that publication was eight and three quarters percent (8.75%). The interest rate (spread) to be added to the prime rate on the beginning of each adjustment period will be one and one half percent (1.5%).

(3) Monthly Fluctuations: Adjustments shall be made on a monthly basis with said adjustment occurring on the first business day of each month. Adjustments will begin on the first business day of the month immediately following the date of the Note hereof.

(4) The interest rate on this Note shall increase or decrease by adding the interest rate spread on the prime rate as of the beginning of each adjustment period.

Holder should give written notice to the Undersigned of each increase or decrease in the interest rate within thirty days after the effective date of each rate adjustment; however, the fluctuation of the interest rate is not contingent on whether the notice is given.

(5) Borrower shall provide Lender with written notice of intent to prepay part or all of this loan at least three (3) weeks prior to the anticipated prepayment date. A prepayment shall be defined as any payment made ahead of schedule that exceeds 20% of the then outstanding balance.

(6) If the Borrower is in default on payments when SBA purchases its guaranteed portion, the rate of interest on the unguaranteed portion shall become fixed at the rate in effect as of the initial date of default. If the Borrower is not in default on payments when SBA purchases its guaranteed portion, the rate of interest on the unguaranteed portion shall be fixed at the rate in effect as of the initial date of purchase by SBA.

Provided, however, in no event shall the amount of interest payment hereunder, together with all amounts reserved, charged, or taken by the Lender/SBA as compensation for fees, services, expenses incidental in the making, negotiating or collection of the loan evidenced hereby exceed the maximum rate of interest on the unpaid principal balance hereof allowable by applicable law. In the event that any sum is collected, said sum shall be applied to reduce the principal in an inverse order of maturity.

B. Use of Proceeds of Loan as follows:

(1) Approximately $750,000.00 for working capital to be disbursed in increments as deemed necessary by Lender/SBA.

Note: Funds not disbursed as a result of minor variations in above amounts may be disbursed as working capital.

C. Collateral:

Prior to initial disbursement, Lender shall be assured of the following lien positions:

(1) First security interest (under UCC) in all machinery, equipment, furniture, fixtures, inventory, general intangibles, and Accounts Receivable, excluding specific export realted receivables and inventory, now owned, to be acquired with loan proceeds and hereinafter acquired or created by Borrower, including all substitutions and accessions thereto and the proceeds thereof. Said assets to be located at 7 Industrial Drive South, Smithfield, RI. Lender to obtain a detailed listing of collateral prior to disbursement of loan proceeds.

(2) Assignment of life insurance on Robert J. Thomson and Frederick G. Thomson in the amount of $750,000.00. (This must be the decreasing term type unless the Borrower specifically requests in writing that he be permitted to assign existing whole life or other permanent type of insurance.)

NOTE: Assignment of life insurance shall be an Absolute Collateral Assignment properly acknowledged by Home Office of Insurer. Lender should not be named as beneficiary of these policies. There shall be no purchase of additional life insurance from business income or assets during the time of the loan without prior written approval of Lender.

4. To further induce Lender to make and SBA to guarantee this Loan, Lender and SBA impose the following conditions:

A. Execution of all documents required in Item 1 above.

B. Reimbursable expenses - Borrower will, on demand, reimburse Lender for any and all expenses incurred, or which may be hereafter incurred, by Lender from time to time in connection with or by reason of Borrower's application for, and the making and administration of the Loan.

C. Books, Records and Reports - Borrower will at all times keep proper books of account in a manner satisfactory to Lender/SBA. Borrower hereby authorizes Lender/SBA to make or cause to be made, at Borrower's expense and in such manner and at such times as Lender/SBA may require, (a) inspection and audits of any books, records and papers in the custody or control of Borrower or others, relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (b) inspections and the appraisals of any of Borrower's assets.

Borrower will furnish to Lender/SBA for the 12 month period ending December 31, 1995 and annually thereafter (no later than 3 months following the expiration of any such period) and at such other times and in such form as Lender/SBA may prescribe, Borrower's reviewed Balance Sheet and Profit and Loss Statements within 120 days of each period end.

Borrower hereby authorizes all Federal, State and municipal authorities to furnish reports of examinations, records and other information relating to the conditions and affairs of Borrower and any desired information from reports, returns, files and records of such authorities upon request by Lender/SBA.

D. Borrower shall not execute any contracts for management consulting services without prior approval of Lender/SBA.

E. Distribution and Compensation - Borrower will not, without the prior written consent of Lender/SBA, (a) if Borrower is a corporation, declare or pay any dividend or make any distribution upon its capital stock, or purchase or retire any of its capital stock, or consolidate or merge with any other company or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus or otherwise, to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company, or to any officer, director or employee of Borrower, or of any such company, (b) if Borrower is a partnership or individual, make any distribution of assets of the business of Borrower, other than reasonable compensation for services, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus or otherwise, to any partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

Notwithstanding the foregoing, unless there shall have occurred and be continuing a default hereunder, or unless a default shall arise as the result of the payment hereinafter described, Borrower may, to the extent otherwise permitted by applicable law, declare and pay dividends to stockholders in cash in respect of each fiscal year during which Borrower's "S" election is in effect under the Internal Revenue Code in an amount not to exceed the amount necessary to provide shareholders with funds to pay taxes on the net income of Borrower adjusted for prior losses, which are apportioned under the Internal Revenue Code to the shareholders for purposes of income taxation.

Additional Financial Reporting: In addition to the financial reporting requirements above, the Borrower will furnish to Lender management prepared financial statements and accounts receivables and payables agings on a monthly basis within 30 days of each period end.

F. Other Provisions:

(1) Prior to first disbursement, on account of the loan, evidence satisfactory to Lender that all licenses necessary for operation of business have been issued or tentatively assured.

(2) Prior to first disbursement, Borrower to furnish executed lease (satisfactory to Lender) covering the real property located at 7 Industrial Drive South, Smithfield, RI. Said lease to include Landlord's Waiver.

(3) Prior to first disbursement, the Lender must be in receipt of evidence of the kind described below from an independent authoritative source which is sufficient to indicate to the Lender that the property is not in a special hazard area. If such evidence is not provided to the Lender, the borrower must obtain, and maintain, Federal Flood Insurance or other appropriate special hazard insurance in amounts and coverages equal to the lesser of (1) the insurable value of the property or (2) the maximum limit of coverage available. Evidence that required flood or special hazard insurance has been acquired may be in the form of proof of payment to any licensed insurance agent specifically relative to the required flood or hazard insurance or a copy of the required flood or hazard insurance policy which has been issued. Borrower will not be eligible for either any future disaster assistance or SBA business loan assistance if this flood or special hazard insurance is not maintained as stipulated herein throughout the entire term of this loan.

As evidence that the property is not located within a special hazard area subject to flooding, mudslides, erosions or earthquakes, the Lender may rely on a determination of flood zone or special hazard area status by the applicant's property and casualty insurance company, a local government agency or other authoritative source approved by SBA which would ordinarily have knowledge of the special hazard area status for the property being financed.

(4) Borrower shall provide and maintain hazard insurance (fire and extended coverage) in amounts and coverage equal to the lesser of (a) the amount of this loan, (b) the insurable value of the property, or (c) the maximum limit of coverage available. Lender shall be named loss payee of the insurance.

(5) Agreement that there will be no further borrowing or leasing without prior written consent of Lender.

(6) Borrower shall post SBA Form 722, "Equal Opportunity Poster," where it will be clearly visible to employees, applicants for employment and the general public.

(7) Prior to any disbursement, Borrower shall submit satisfactory evidence to Lender that Borrower is incorporated and that it is in good standing with the Secretary of State.

(8) Total annual compensation (including salaries, withdrawals, fees, bonuses, commissions, drawing accounts and other payments whether direct or indirect, in money or otherwise) of the following officers, stockholders, directors, partners, proprietors or others named herein is to be limited to the amount set opposite each name:

Robert J. Thomson and Frederick G. Thomson - $150,000.00 combined

Plus such additional amounts as may be necessary to pay income taxes on the profits of the business.

(9) Prior to first disbursement, on account of the loan, Borrower shall submit an independent appraisal of the collateral to be offered for this loan satisfactory to Lender.

(10) Prior to first disbursement, Borrower to present satisfactory evidence that all Federal and State taxes are current.

(11) Borrower covenants and warrants that:

(a) Borrower is in compliance with all applicable Federal and State environmental laws, and regulations and that they will continue to comply with all such laws and regulations in the future.

(b) No proceedings alleging violations of environmental laws are pending on property owned or project property to be purchased, leased or rented by Borrower.

(c) Borrower has no knowledge of hazardous waste contamination on property owned or project property to be purchased, leased or rented by Borrower.

(d) Borrower assumes all responsibility and all liability for toxic substance cleanup resulting from any of Borrower's violations, past, present or future, and agrees to indemnify the Lender and SBA for any and all resulting liabilities or costs.

(12) Borrower agrees that it will require proof of a proper environmental permit or permits for the disposal of dangerous or hazardous waste by any company or individual contracted with for the storage, treatment or disposal of such waste. Borrower will provide a copy of said permit(s) to Lender upon receipt and Borrower agrees to maintain a copy of said permit(s) in its permanent records during the term of this Loan.

(13) The Borrower recognizes such other conditions not inconsistent with the provisions of the Authorization or of the Guarantee Agreement as may be imposed by the Lender.

(14) Borrower certifies that no principal who owns at least 50% of the voting interest of the company is delinquent more than 60 days under the terms of any (a) administrative order, (b) court order, or (c) repayment agreement that requires payment of child support.

(15) A negative equity pledge on the real property located at 51 Cromwell Avenue, Warwick, RI, in the names of Robert J. and Pegg W. Thomson.

(16) A negative equity pledge on the real property located at 10 Fenner Grant Lane, Cumberland, RI, in the names of Frederick G. and Judith L. Thomson.

5. <u>Parties Affected:</u>

This Agreement shall be binding upon Borrower and Borrower's successors and assigns. No provision stated herein shall be waived without the prior written consent of SBA. This loan shall be administered as provided in the Guaranty Agreement.

Philip Lader
Administrator
U.S. Small Business Administration

Date: September 25, 1995

By: [signature]
Jean Sawyer
Supervisory Economic
Development Specialist

On behalf of Lender:

Date: 10/23/95

By: [signature]

Borrower hereby agrees to the conditions imposed herein and further agrees that the terms and conditions herein are for the benefit of, and may be enforced by, Lender and SBA. This Authorization and Loan Agreement and amendments constitute the Loan Agreement between Lender and Borrower.

Borrower further acknowledges: (1) that the Authorization is not a commitment by Lender to make a loan to Borrower; (2) that the Authorization is solely for the benefit of Lender and the SBA, with no third-party rights or benefits arising therefrom; and (3) that payments by SBA to lender shall not apply to the loan account of Borrower, nor in any way diminish the indebtedness under its Note, nor the obligation of any personal guarantor of Note.

Date: 11/30/95

By: [signature] PRES.

NOTE: Corporate Borrowers must execute this Authorization, in corporate name, by duly authorized officer, and seal must be affixed and duly attested; partnership Borrowers must execute in firm name, together with signature of all general partners.